**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| IRENE S. CARRICO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:14-CV-32 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiff Irene S. Carrico ("Carrico") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Carrico alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to find that Carrico's depression, anxiety, and otitis were severe impairments, (2) failing to perform a function-by-function analysis prior to assessing her RFC, (3) failing to account for her combination of impairments when formulating the RFC, and (4) improperly rejecting a medical source statement and GAF scores. Carrico also claims that the Appeals Council erred when it did not remand her claim after she submitted a medical source statement dated July 1, 2014.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the

1

ALJ's conclusions. As such, I **GRANT** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Carrico failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Carrico bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## SOCIAL AND VOCATIONAL HISTORY

Carrico was born in July of 1962 (Administrative Record, hereinafter "R." at 47), and is considered a "younger person" under the Act. 20 C.F.R. §§ 404.1563(c). Carrico is insured through June 30, 2011(R. 226); therefore she must show that her disability began before the end of her insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Carrico completed the tenth grade in school and earned her GED. R. 48. She graduated from the Rouse School of Cosmetology in 1985, but she does not hold a current cosmetology license and does not remember the last time she worked in that field. Id. Carrico last worked in June of 2010 as a cashier at Big Horn Market. R. 49. She previously worked as a cashier at a country store, as a

manager and server in a restaurant, and as a cashier in the service department of an automotive repair business. R. 50–51. Carrico reported that during the relevant period, she had the capacity to do light household chores with breaks, go outside every day, shop for groceries, pay bills, manage money, prepare simple meals, care for her cats, and lift ten pounds. R. 332–36.

## **CLAIM HISTORY**

Carrico filed for DIB on June 9, 2011, claiming that her disability began on October 29, 2010. R. 112. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 97, 109. On July 2, 2013, ALJ Brian Rippel held a hearing to consider Carrico's disability claim. R. 44–85. Carrico was represented by an attorney, Robert Golcheski, at the hearing, which included testimony from Carrico, her husband, and vocational expert ("VE") Dr. David Burnhill. R. 44.[1]

On July 15, 2013, the ALJ entered his decision denying Carrico's claims. R. 21. The ALJ found that Carrico suffered from the severe impairments of asthma, osteoarthritis, Meniere's disease,[2] and spine impairments. R. 26. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 28. The ALJ further found that Carrico retained the residual functional capacity ("RFC") to perform light work with no climbing of ladders, ropes, or scaffolds and only occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, and crawling. R. 28. The ALJ also found that Carrico should avoid concentrated exposure to extreme cold and wetness, excessive vibration and pulmonary irritants, and avoid all exposure to workplace hazards, including unprotected

---

[1] Carrico previously filed an application for DIB on July 23, 2009. R. 24. This application was denied on April 28, 2010 and Carrico did not appeal that decision. R. 24.

[2] Meniere's disease is an inner ear disorder that causes vertigo, progressive hearing loss, tinnitus (ringing in the ear), and sometimes a feeling of pressure in the ear. *Meniere's Disease*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/menieres-disease/basics/definition/con-20028251 – Meniere's disease (last visited Dec. 28, 2015).

4

heights and machinery. Id. The ALJ determined that Carrico could return to her past relevant work as a cashier (R. 34), and that Carrico could work at other jobs that exist in significant numbers in the national economy, namely, a ticket seller. R. 36. Thus, the ALJ concluded that she was not disabled. R. 36. On August 14, 2014, the Appeals Council denied Carrico's request for review (R. 1), and this appeal followed.

## ANALYSIS

### Severe Impairments

Carrico argues that the ALJ erroneously concluded that her depression, anxiety, and otitis were not severe impairments. The ALJ determined that Carrico suffered from the severe impairments of spine impairments, asthma, osteoarthritis, and Meniere's disease. R. 26. The ALJ determined that Carrico's depression and anxiety were not severe because treatment notes from October 28, 2010 through June 30, 2011 revealed only two treatment sessions for mental health issues. R. 26–27. Thus the ALJ concluded that Carrico's anxiety and depression did not require significant treatment and did not cause more than minimal limitations in her ability to work. R. 27.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least twelve months to be considered

"severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Carrico bears the burden of proving that her depression, anxiety, and otitis are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Further, under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." Miller v. Astrue, No. 8:10-1142-HMH-JDA, 2011 WL 1576203, at *15 (D.S.C. April 7, 2011). Consequently, any error by the ALJ at step two is harmless if the ALJ considers the effects of all of Carrico's impairments in the subsequent steps. See Brooks v. Astrue, No. 5:10CV00104, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing Miller, 2011 WL 1576203, at *15); see also Gaskins v. Comm'r, No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014); Hammond v. Astrue, No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases).

Here, substantial evidence supports the ALJ's conclusion that Carrico's depression, anxiety, and otitis were not severe. The ALJ also considered Carrico's established impairments in step four of his analysis and accounted for all of her substantiated impairments when formulating her RFC. Even if the ALJ erred by labeling these impairments as non-severe, the error is harmless.

With regard to Carrico's otitis, Carrico never claimed that otitis media[3] – a disorder she now claims is separate and apart from her Meniere's disease – was a severe impairment. In the claimant information section of Carrico's DIB determination, she did not list otitis as a severe

---

[3] Otitis media is a bacterial or viral infection that affects the middle ear. *Ear infection (middle ear)*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/ear-infections/basics/definition/con-20014260 (last visited Dec. 28, 2015).

impairment. R. 112. At the hearing, Carrico's only testimony about her ear issues included symptoms related to her Meniere's disease. She did not mention chronic ear infections. Her pain questionnaire notes that she suffered from ear pain, but the form does not mention any cause for this pain other than Meniere's disease. R. 328–38. While chronic ear infections can lead to hearing loss and other complications, Carrico points to no evidence in the record that her ear infections – in addition to the symptoms caused by her Meniere's disease – caused her any functional limitations whatsoever. Pain and a medical diagnosis without any accompanying functional limitations do not support a finding that a particular medical issue is disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

In regards to her mental health issues, the ALJ recognized that Carrico had been diagnosed with depression and a panic disorder. R. 26. However, the ALJ also noted that Carrico's treatment records for her mental health issues revealed minimal conservative treatment. R. 26–27. Carrico sought treatment for these issues only twice during the relevant period (in February and March of 2011). R. 27. Carrico points to earlier treatment records dating back to 2005 to support her claim that her mental health problems were severe. Pl.'s Br. Summ. J. 8–9. These older records may have supported a finding that Carrico's depression and anxiety were, at some point, severe impairments. I make no finding as to that issue. However, the minimal recent treatment records support the ALJ's conclusion that Carrico's depression and anxiety were not severe at the time of the hearing or at any time during the relevant period. In this case, the minimal treatment records combined with Carrico's limited testimony regarding her mental health issues support the ALJ's conclusion that Carrico's mental health issues were not severe impairments.

Carrico also argues that the ALJ erred because he failed to discuss the "paragraph A" criteria of listing 12.04 or 12.06. Pl.'s Br. Summ. J. 7. Carrico asserts that this failure led the ALJ to incorrectly analyze the extent of her anxiety and depression and led to an improper credibility determination[4] and an improper assessment of the "paragraph B" criteria. Id.

The ALJ must use a special technique to determine the severity of mental impairments. 20 C.F.R. § 404.1520a. He must first evaluate the claimant's pertinent symptoms, signs and laboratory findings to determine whether she has a medically determinable mental impairment. If the ALJ determines that a medically determinable mental impairment exists, the ALJ must then rate the degree of functional limitation resulting from the impairments in four broad functional areas: 1) daily living, 2) social functioning, 3) concentration, persistence, or pace, and 4) decompensation. Id. Mental impairments are considered severe if they cause more than mild limitations in one of the four broad functional areas. Id.

Here, the ALJ followed the regulations. The ALJ considered Carrico's allegations about her mental health impairments and the medical evidence in the record and found that Carrico suffered from the medically determinable mental impairments of depression and a panic disorder. R. 26. The ALJ then went on to properly consider the four functional areas of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. R. 27. He determined that Carrico had no limitations in activities of daily living, only mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of decompensation. R. 27. Thus the ALJ concluded that Carrico's mental impairments were not severe. The ALJ used the proper technique to analyze the severity of mental

---

[4] Carrico does not contest the ALJ's conclusion that she was not fully credible.

impairments as outlined in 20 C.F.R. § 404.1520a(d)(1) and the conclusions stemming from this analysis are supported by substantial evidence.

The ALJ's findings are supported by the opinions of the reviewing state agency physicians. Louis Perrott, Ph.D., completed a consultative examination and concluded that Carrico had no limitations in activities of daily living, mild limitations in social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 105. Dr. Perrott specifically considered Carrico's anxiety, depression, cannabis abuse, panic episodes, and her agoraphobia and concluded that she had "no significant limitations . . . in her adaptive functioning." Id. Like the ALJ, Dr. Perrott determined that Carrico suffered from the medically determinable impairments of affective disorder and anxiety disorder, but concluded that these impairments were not severe. R. 104. Julie Jennings, Ph.D., also completed a consultative examination and came to similar conclusions. Dr. Jennings found that Carrico had only mild limitations in activities of daily living, social functioning, maintaining concentration, persistence, or pace, and that she experienced no episodes of decompensation. R. 118.

Contrary to Carrico's assertion, the ALJ did not err by failing to discuss the "paragraph A" criteria of listing 12.04 or 12.06. Only if an impairment is "severe" should the Commissioner move to the next step of the analysis and determine whether the severe impairment(s) or a combination thereof meet or medically equal a listed impairment. See Diaz v. Colvin, No. 8:13-705-RMG, 2014 WL 3887856, at *11 (D.S.C. Aug. 5, 2014) (citing Washington v. Astrue, 698 F. Supp. 2d 562, 581 (D.S.C. Mar.17, 2010) (finding that an ALJ need not evaluate whether an impairment found to be non-severe satisfies a particular listing)). Here, substantial evidence supports the ALJ's conclusion that Carrico's mental impairments are non-severe and there was no reason for him to assess whether they met or equaled a listing.

Under the substantial evidence standard, the issue for me to consider is not whether the ALJ could have come to some other reasonable conclusion about the severity of Carrico's mental health disorders and her otitis media. Rather, the issue is whether substantial evidence – more than a mere scintilla – supports the ALJ's conclusion. Here, the ALJ's step two analysis is supported by substantial evidence and should not be disturbed. I find no error on the part of the ALJ in determining Carrico's impairments were not severe.

**Function-by-Function Analysis**

Carrico argues that the ALJ erred when he failed to perform a function-by-function analysis of her impairments. Specifically, Carrico points to the ALJ's failure to specify which of Carrico's osteoarthritis locations the ALJ found to be severe, and which of the RFC restrictions are specifically attributable to her severe impairments. Pl.'s Br. Summ. J. 13, 14. Carrico also argues that the RFC does not account for an anticipated decrease in Carrico's ability to maintain concentration, persistence, or pace due to her chronic pain. Finally, Carrico argues that these failures lead to the ALJ's failure to properly consider her combination of impairments. These arguments voice nothing more than Carrico's disagreement with the ALJ's determinations. Simply disagreeing with the ALJ's RFC determination requires this court to re-weigh the evidence, and that is something I cannot do.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material

inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184 , at *7.  In the recent Fourth Circuit opinion, Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's opinion meets the standards set by SSR 96-8p. The ALJ's findings include a detailed summary and analysis of Carrico's impairments, medical records, testimony, and opinion evidence. This section of the opinion spans almost six single-spaced pages of the twelve-page opinion and discusses Carrico's symptoms, her resulting limitations, medical evidence, medical opinions, Carrico's testimony, her credibility, and conflicting medical evidence. R. 28–34. The ALJ explained why he gave little weight to the opinion of Tammy Wingo, FNP, why he gave no weight to Carrico's GAF scores, and why he gave great weight to the opinions of the state agency physicians who reviewed Carrico's case. R. 33–34. The ALJ also discussed Carrico's ability to perform sustained work activities on a daily basis and described the amount of each activity she could perform based on the evidence in the case. SSR 96–8p, 1996 WL 374184, at *7.  After making these conclusions, the ALJ determined that Carrico could perform light work as defined in 20 C.F.R. § 404.1567(b). "Light work" requires lifting no more

11

than twenty pounds at a time, frequently lifting or carrying objects weighing up to ten pounds, frequent walking or standing or sitting with some pushing and pulling of arm or leg controls. In addition to finding that Carrico could perform light work, the ALJ found that she would be limited to no climbing of ladders, ropes or scaffolds, occasional climbing of stairs or ramps, occasional balancing, stooping, kneeling, or crouching, that she would need to avoid concentrated exposure to extreme cold and wetness, excessive vibration, irritants, and avoid all exposure to unprotected heights and hazardous machinery. R. 28–29. The ability to perform a function on an "occasional" basis corresponds to one-third of an eight-hour workday. See SSR 83–10, 1983 WL 31251, at *5–6 (1983). Thus, the ALJ appropriately discussed Carrico's abilities as they could be performed over the course of the workday. See Dugger v. Colvin, No. 5:15-CV-00020-MOC, 2015 WL 6455390, at *7–8 (W.D.N.C. Oct. 26, 2015); Ashby v. Colvin, No. 2:14-674, 2015 WL 1481625, at *5 (S.D.W. Va. Mar. 31, 2015). I am not left to guess about how the ALJ arrived at his conclusions. Thus, the ALJ satisfied his responsibility under SSR 96-8p.

**Nurse Practitioner's Opinion**

Carrico next asserts that the ALJ erred when he improperly rejected the medical source statement from Tammy Wingo, FNP. In her January 23, 2013 report, Ms. Wingo concluded that Carrico suffered two to three Meniere's disease attacks per month, each lasting from four days to two weeks, that she would be incapable of even low-stress work, that she would be off task for twenty-five percent of a workday, and that she would miss more than three days of work per month. The ALJ gave little weight to this opinion and Carrico contests that decision.

Substantial evidence supports the ALJ's decision to give Ms. Wingo's opinion no weight and find Carrico capable of performing a range of light work. As a nurse, Ms. Wingo is not an

acceptable medical source as defined by the Act.[5] 20 C.F.R. §§ 404.1513, 416.913 (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinions of non-acceptable medical sources are not entitled to any particular weight, and the ALJ is not required to explain the weight given to such opinions unless it might affect the outcome of the case. See Adkins v. Colvin, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh physical therapist's opinion).

Nevertheless, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources…" Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006); 20 CFR §§ 404.1513(d), 416.913(d)). While evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment, "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011

---

[5] Carrico argues that Ms. Wingo worked closely under the supervision of an accepted medical source, thus her opinion should be considered as if it is from an accepted medical source. Pl.'s Br. Summ. J. 17–18. Specifically, Carrico argues that Ms. Wingo should be considered part of a team with Larry F. Smith, M.D., because they worked closely together. This argument is not convincing. Carrico relies upon two cases finding that when a non-acceptable medical source is part of an "interdisciplinary team" with an acceptable medical source, their opinion should be treated as that of an acceptable medical source. See Jerry v. Comm'r, 97 F. Supp. 2d 1219, 1223 (D. Or. 2000); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996). However, in Jerry, the opinion at issue was co-signed by both a licensed physician and a nurse practitioner. 97 F. Supp. 2d at 1223. Further, the social security statutes have been amended since the Gomez decision, and the Commissioner no longer includes "interdisciplinary team," under the definition of "acceptable medical sources." See 20 C.F.R. §§ 404.1513(a)(1–5), 416.913(a)(1–5); Hudson v. Astrue, No. CV-11-0025-CI, 2012 WL 5328786, at *4 n. 4 (E.D. Wa., Oct. 29, 2012). Here, Dr. Smith did not co-sign the January 23, 2013 opinion. Thus, there is no basis for the court to conclude that the opinion is attributable to both Ms. Wingo and Dr. Smith.

WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)).

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Here, the ALJ considered Ms. Wingo's professional qualifications, the length and nature of her examining relationship with Carrico, the weight of the evidence supporting her opinion, and her opinion's consistency with the other relevant evidence in the record. The ALJ did not simply dismiss her opinion because she was an "unacceptable medical source," but weighed it along with the other evidence in the record.[6] Thus, the ALJ did not use the wrong legal standard when weighing Ms. Wingo's opinion. See Smallwood v. Colvin, No. 4:13-CV-00069, 2015 WL 72115, at *9 (W.D. Va. Jan. 6, 2015).

---

[6] Carrico argues that ALJ discounted Ms. Wingo's opinion solely because she is not an acceptable medical source. Pl. Br. Summ. J. p. 16. This contention is plainly contradicted by the ALJ's opinion, which includes multiple bases upon which to discount Ms. Wingo's conclusions. The ALJ found that Ms. Wingo's opinion was at times written in the first person, suggesting that Carrico herself authored the report. R. 33. Additionally, the report seemed to adopt Carrico's allegations "without balance or objectivity." R. 33–34. The report was signed in January 2013, more than eighteen months after Carrico's date last insured. R. 34. Finally, the report contradicted Carrico's treatment notes, "which reveal that the claimant had not reported Meniere's attacks lasting 4 days to 2 weeks to any of her treatment providers, particularly through her date last insured." Id.

14

Substantial evidence supports the ALJ's treatment of Ms. Wingo's opinion. Her report is contradicted by the other treatment notes written during Carrico's visits to Dr. Smith's office and her encounters with Ms. Wingo. These notes reveal that Carrico presented to Dr. Smith's clinic chiefly complaining of back pain. See, e.g., R. 1170, 1175, 1178, 1182. While Carrico did, at times, seek treatment for ear pain and issues related to her Meniere's disease, she never complained of the debilitating symptoms noted in Ms. Wingo's report. See, e.g., R. 1192, 1197. On January 8, 2013, less than one month before Ms. Wingo authored her report, Elizabeth Atkinson, FNP, noted that Carrico "is currently able to do activities of daily living without limitations" though she did complain of ongoing back pain. R. 1188. During a visit on February 7, 2013, physician's assistant Seth Jones saw Carrico who was again complaining of back and neck pain, but no complications from Meniere's disease. R. 1182. Ms. Wingo's report itself is internally inconsistent because it notes that Carrico will likely be off task at work both zero percent and twenty-five percent of the time. It also notes that she will need to miss "about three days [of work] per month" and "more than four days per month." R. 1159.

Additionally, Carrico's own report of her daily activities contradicts Ms. Wingo's restrictive opinion. Her adult function report focuses on her back and neck pain and notes that she is able to do light house work, take care of her personal needs, drive, prepare meals, and shop for groceries. R. 331–38. The report does not mention debilitating Meniere's disease attacks lasting from four days to two weeks.

Carrico makes a similar argument regarding the ALJ's treatment of her GAF scores, which were in the fifty to fifty-six range. Pl.'s Br. Summ. J. 20. She argues that the ALJ improperly gave the scores no weight. Id. Diania Dickerson, BA, QMHP, assigned the GAF scores at issue during Carrico's visits to Central Virginia Community Services. R. 739–62. The

15

ALJ afforded these scores no weight because they were documented by an unacceptable medical source after what appear to be minimal observations and visits. R. 34. Like Ms. Wingo's report, these GAF determinations were not co-signed by a physician. It appears Ms. Dickerson also assigned GAF scores to Carrico even when Carrico appeared in the office but was not actually seen by a health care provider. See R. 750 (noting that Carrico did not have her co-pay, but instead filled out forms and stated that she would call to reschedule her appointment). Other GAF scores were assigned when Carrico called to cancel an appointment. R. 753, 757. The ALJ's treatment of these scores from an unacceptable medical source was not error. Without additional context, a GAF score is "'only a snapshot in time, and not indicative of [a claimant's] long term level of functioning.'" Harder v. Comm'r, 2014 WL 534020, at * 9 (W.D. Va. Feb. 10, 2014) (quoting Parker v. Astrue, 664 F. Supp.2d 544, 557 (D.S.C. 2009)). Substantial evidence in the record supports the ALJ's decision to give these scores no weight.

Carrico's chief complaint is that she disagrees with the ALJ's decision to give certain pieces of evidence little or no weight. As for Ms. Wingo's report, Carrico points to no evidence in the record that supports the report but instead argues that it is "not contradicted by any substantial evidence in the evidentiary record." Pl.'s Br. Summ. J. 18. However, that is not the standard of review in this case. The proper inquiry is whether substantial evidence supports the ALJ's decision, not whether the ALJ could have logically come to some other conclusion that is more favorable to the claimant. This court is prohibited from re-weighing the evidence in this case. When substantial evidence supports the ALJ's decision, I must affirm that decision. Here,

substantial evidence supports the ALJ's decision to give little weight to Ms. Wingo's opinion and determine that Carrico is not disabled.[7]

**<u>Appeals Council Decision</u>**

Carrico argues that the Appeals Council erred when it did not remand her case to the ALJ for further consideration following the submission of a medical source statement from Juliana Frosch, PMH-NP. Carrico asserts that this report, dated July 1, 2014, should have been considered by the ALJ.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." <u>Wilkins v. Sec'y., Dep't. of Health and Human Servs.</u>, 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. <u>Id.</u> When the Appeals Council denied Carrico's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." <u>Wilkins</u>, 953 F.2d at 96.

---

[7] Carrico also argues that the ALJ had a duty to recontact Ms. Wingo and Dr. Smith to resolve any alleged discrepancies between the report and the record. This too, is incorrect. The regulations state that a Commissioner "may" recontact a treating physician, psychologist, or other medical source if after weighing the evidence the Commissioner cannot reach a conclusion about whether the claimant is disabled. 20 C.F.R. § § 404.1520b(c), 416.920b(c). However, the regulation further states, "[i]f all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. §§ 404.1520b(a), 416.920b(a). Additionally, SSR 96-5p states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Notably, the regulation only refers to recontacting treating sources, and does not appear to apply to a non-acceptable medical source like Ms. Wingo. SSR 96–5p, 1996 WL 374183 (SSA) (July 2, 1996). Here, Ms. Wingo's opinion did not trigger a duty by the ALJ to recontact because the record was adequate to determine whether Carrico was disabled, and the opinion did not contain a conflict or ambiguity that must be resolved. <u>See, e.g.</u>, <u>Majica v. Astrue</u>, No. 06-2900, 2007 WL 4443247, at * 3 (E.D. Pa. Dec. 18, 2007).

"However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp.2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp.2d at 751.

In this case, Ms. Frosch's report is new because it is not duplicative or cumulative. However, the report is not material and it does not relate to the period on or before the date of the ALJ's decision. Ms. Frosch's report is dated July 1, 2014, and is a "check-the-box" style form in which Ms. Frosch gives her opinion regarding Carrico's various abilities and limitations related to her medical issues. The ALJ held Carrico's hearing on July 2, 2013, almost one year before Ms. Frosch authored this report. The report is composed in the present tense and there is no indication that it relates back to the period prior to the hearing in any way. More importantly, the report was generated almost three years after Carrico's date last insured and does nothing to inform the reader about her condition prior to the date the report was authored. Carrico admits in her brief that Ms. Frosch did not begin seeing her until after the hearing in her case. Pl.'s Br. Summ. J. 22. Thus there is no way that Ms. Frosch could give an opinion concerning Carrico's condition prior to the hearing. Therefore, it is not possible that the report could change the ALJ's decision concerning Carrico's abilities before the hearing.

Again Carrico asserts that this piece of evidence is not contradicted by substantial evidence in the record and should therefore be accorded great weight. Pl.'s Br. Summ. J. 23. Again the court reminds her that this is not the proper standard of review for this appeal. The

proper inquiry is whether substantial evidence supports the Commissioner's decision, not whether evidence supporting some other conclusion is without contradiction. In this case, the Appeals Council did not err when it refused to consider Ms. Frosch's report and the resulting decision from the Commissioner is supported by substantial evidence and must be affirmed.

## **CONCLUSION**

For the foregoing reasons, I find that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** summary judgment to the defendant and **DISMISS** this case from the court's docket.

Entered: March 16, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge